JOHN E. HAYNER *et al.*

*v.*

JOHN H. SMITH *et ux.*

1. PARTIES—*married women—whether should sue alone.* Since the act of 1861, in a suit to recover rent under a lease executed by a married woman on her own separate property, it is error to join her husband as plaintiff in the action.

2. LANDLORD AND TENANT—*of an eviction of the latter by the former from a portion of the demised premises—whether will release the tenant from the payment of rent.* Where a lessee is, by his lessor, wrongfully evicted from a portion of the demised premises, he is thereby excused from the payment of any of the rent, although he remains in possession of the remaining portion of the premises to the end of the term.

3. But, to constitute an eviction, there must be more than a mere trespass by the landlord. There must be something of a grave and permanent character done by the landlord with the intention of depriving the tenant of the enjoyment of the premises—the question of eviction or no eviction depending upon the circumstances, and being a matter for the jury to decide.

4. Some acts of interference by the landlord with the tenant's enjoyment of the premises may be mere acts of trespass, or may amount to an eviction, the question whether they partake of the latter character depending upon the intention with which they are done—if clearly indicating an intention on the landlord's part that the tenant should no longer continue to hold the premises, they would constitute an eviction.

APPEAL from the Alton City Court; the Hon. HENRY S. BAKER, Judge, presiding.

Mr. CHARLES P. WISE, for the appellants.

Mr. WILLIAM S. FIELD, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action originally brought before a justice of the peace in Alton, in the county of Madison, by John H. Smith and Elizabeth Smith, against appellants, to recover the monthly rent claimed to be due on a written lease executed by Elizabeth Smith to appellants.

The judgment by the justice of the peace was in favor of the plaintiffs, from which the defendants appealed to the Alton city court, where a like judgment was rendered. To reverse this judgment the defendants appeal to this court.

The first point made by appellants is, that the lease was executed by Elizabeth Smith to appellants' assignors, and she alone should have brought the action.

This point is well taken, for, although John H. Smith may be the husband of Elizabeth, and was so at the time of executing the lease, he did not sign it, nor was the ownership of the property in him. It was in his wife in her own right.

No joint cause of action was established, and there was no undertaking to pay rent to the plaintiffs. There was, therefore, a variance between the cause of action and the evidence. It was payable to Elizabeth Smith in her own right, and she alone must sue. *Emerson* v. *Clayton,* 33 Ill. 497; *C. B. and Q. R. R. Co.* v. *Brown,* 51 ib. 206.

The very object and purpose of the act of 1861, commonly called the "Married Woman's Act," would be defeated, should the husband join in an action to recover the property of the wife, for in such case he could control the recovery and deprive the wife of its enjoyment.

This disposes of the case, and must reverse the judgment.

It is suggested that another action may be brought by the proper party, and it is desired this court should state the principles which should govern it.

The defense to the action was that, after the demise, John H. Smith, who it is proved controlled the property for the lessor, took possession of a building on the premises erected by the lessees for a drying house, and used it as a stable, and the entire lot as a cattle yard, without the consent of the lessees; that these acts of the lessor amounted to an eviction, and discharged the lessees from the payment of rent for the unexpired term.

There is a covenant in this lease for the quiet enjoyment of the whole of the demised premises; but if there was not such a covenant, such enjoyment, without any protestation by the landlord, would be implied in the condition on which the tenant is bound to pay the rent. The law implies covenants against such acts of the landlord as destroy the beneficial enjoyment of the premises leased. *Wade* v. *Halligan,* 16 Ill. 507.

Forcible expulsion of the tenant is, of course, an eviction, and may terminate the tenancy.

There is much diversity of opinion in the books on the question of a constructive eviction and the consequences flowing from it. Some courts have held that, an actual eviction

of the lessee by a title paramount, or by the lessor himself, would alone justify the lessee in resisting the payment of rent, whilst other courts go further, and hold that an eviction from a part of the leased premises by the act of the landlord will justify the tenant in abandoning the premises, and thus discharge himself from liability for rent; and other equally reputable courts have said that any act of the lessor which defeats the enjoyment of the entire property by the lessee, though he may continue in possession of the part not intruded upon by the lessor, would be a bar to the recovery of the rent. It is unnecessary to collate these authorities; it is sufficient to say they are not entirely harmonious.

In a case similar to this in all respects, between the same parties, before this court at a former term, in disposing of the instructions given in that case, the second, given on behalf of the lessees defendants, to this effect, was held to be proper : The principle upon which a tenant is required to pay rent is the beneficial enjoyment of the premises unmolested in any way by the landlord; and if the jury believe from the evidence that the plaintiff took possession of any part of the premises leased by her to the defendants, against their consent. then in law it is an eviction, and releases the defendants from the payment of any more rent, and they will find for the defendants. The fourth and seventh instructions were substantially the same.

In addition to the authorities cited in that case, *Briggs* v. *Hall,* 4 Leigh, (Va.) 484, may be referred to. In that case a farm was let for one year, and the landlord entered on a meadow, parcel of the premises, within the year, and cut and carried away the hay without the consent and against the will of the tenant, who, nevertheless, continued to occupy the farm during the residue of the year. It was held, the landlord, by such disturbance of the tenant, lost the benefit of the entire contract, and was not entitled to recover any part of the rent. A reference is made to *Smith* v. *Raleigh,* 3 Campb. 553, in

which Lord ELLENBOROUGH said, "An eviction from part of the demised premises is a complete answer to the action."

In *Dyatt* v. *Pendleton,* 8 Cowen, 727, the court of errors of New York recognize a distinction found in the books where an eviction is by a third person, or by the landlord. A legal eviction of the tenant by a third person excuses the payment of rent—so does any eviction by the lessor. If the eviction be partial, by a third person, the rent will be apportioned, but a partial eviction by the lessor excuses from the payment of the whole rent.

The principle is, that a party who deprives another of the consideration upon which his obligation is founded, can not, in general, recover for a violation of that obligation.

In *Leishman* v. *White et al.* 1 Allen (Mass.) 489, which was an action for use and occupation of a tenement hired by the defendants to the plaintiff, as set out in the first count of the declaration, and in another count, a lease was set out by which plaintiff leased to the defendants a hotel near Spot Pond, with the lands adjoining, and an island in the pond, for five years, at the yearly rent of two hundred and fifty dollars, payable quarterly.

The defendants, among other things, set forth in their answer an eviction by the lessor from a portion of the premises. Evidence offered on the trial, to show the defendants were evicted from a part of the premises, was refused, the court holding that such eviction, if proved, would only bar the plaintiff's claim *pro tanto,* and that he might still recover a proportionate share of the rent according to the ratable value of the portion of the premises from which the defendants were not evicted.

On appeal to the supreme court, it was held, the action could not be maintained, if the defendants proved they had been evicted from a part of the demised premises by the plaintiff. The court say: "In such case, no recovery can be had on the covenant to pay rent, because the defendant has been deprived of the beneficial enjoyment of a portion of the estate by the

tortious act of the lessor, and the covenant being entire, can not be severed or apportioned so as to allow the plaintiff to recover a part of the rent reserved by the lease."

The same doctrine was held by the same court in *Shumway* v. *Collins*, 6 Gray, 232.

In *Christopher, Exr.* v. *Austin*, 1 Kernan (N. Y.) 216, it was said: "A wrongful eviction by the landlord from a part of the demised premises suspends the rent until the possession is restored, and the landlord can not recover a portion of the rent agreed upon, or any compensation for the part of the premises occupied by the tenant while the eviction continued."

Further reflection and a closer examination of authorities have satisfied us that these instructions require some modification.

As was said by the court of common pleas, by JERVIS, Lord Chief Justice, in *Upton* v. *Townsend*, 84 Eng. C. L. 30, and *Same* v. *Greenleaf*, ib: "It is extremely difficult, at the present day, to define with technical accuracy what is an eviction. The word eviction was formerly used to denote an expulsion by the assertion of a title paramount, and by process of law. But that sort of an eviction is not necessary to constitute a suspension of the rent, because it is now well settled that, if the tenant loses the benefit of the enjoyment of any portion of the demised premises by the act of the landlord, the rent is thereby suspended. The term 'eviction' is now popularly applied to every class of expulsion or amotion." This eminent judge further says: "I think it may now be taken to mean this—not a mere trespass and nothing more, but something of a grave and permanent character done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises." The question, therefore, of eviction or no eviction depends upon the circumstances, and is in all cases to be decided by the jury.

WILLIAMS, Justice, in the same case, in delivering his opinion, said: "Considering how frequently transactions of this sort are taking place, it is somewhat remarkable that so

little is to be found in the books upon the subject of eviction. There clearly are some acts of interference by the landlord with the tenant's enjoyment of the premises which do not amount to an eviction, but which may be either acts of trespass or eviction, according to the intention with which they are done. If those acts amount to a clear indication of intention on the landlord's part that the tenant shall no longer continue to hold the premises, they would constitute an eviction."

We are inclined to think the true rule is announced in these cases last cited. The court below will so give instructions in the case as shall conform to it, on the trial of another action brought by the proper party.

For the reasons given, the judgment of the court below is reversed.

<em>Judgment reversed.</em>*

$\checkmark$

63  436
139  608

---

*Hayner *et al.* *v.* Smith *et al.*

. Breese, Justice: This case is in all respects the same as the foregoing, and is decided in the same way.

The judgment is reversed and the cause remanded.